UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

THOMAS M. SMITH,

        Plaintiff,

    v.                                  17-CV-959-LJV-LGF
                                                  DECISION & ORDER

TOWN OF LEWISTON, *et al.*,

        Defendants.

---

On September 26, 2017, the plaintiff, Thomas Smith, commenced this action

against the Town of Lewiston, Frank Previte, and John Penzotti under 42 U.S.C. § 1983

and New York State law.  Docket Item 1.  On January 7, 2018, this Court referred the

case to United States Magistrate Judge Leslie G. Foschio for all proceedings under 28

U.S.C. § 636(b)(1)(A) and (B).  Docket Item 9.

On October 3, 2019, Smith moved for summary judgment, Docket Item 34, and

on October 30, 2019, the defendants cross-moved for summary judgment, Docket Item

39.  The defendants responded to Smith's motion on November 6, 2019, Docket Item

41, and Smith responded to the defendants' motion on January 2, 2020, Docket Item

47.  Smith and the defendants replied on December 4, 2019, and January 16, 2020,

respectively.  Docket Items 45, 48.

On June 30, 2021, Judge Foschio issued a Report and Recommendation

("R&R") finding that Smith's motion should be denied and that the defendants' motion

should be granted in part and denied in part.  Docket Item 52 at 34.  More specifically,

Judge Foschio recommended granting the defendants' motion for summary judgment

1

on Smith's section 1983 and state law malicious prosecution claims but allowing Smith's false arrest and First Amendment retaliatory prosecution claims to proceed.  *Id.*

After several extension of time, *see* Docket Items 55, 57, 60, 62, 65, 67, Smith and the defendants objected to the R&R on January 10, 2022, Docket Items 69, 70. The defendants argue that because they had probable cause to arrest Smith, his false arrest claim fails; that because Smith's conduct was not protected speech, his retaliation claim fails; and that, in any event, they are entitled to qualified immunity as a matter of law.  Docket Item 69.  Smith argues that Judge Foschio erred in recommending dismissal of his malicious prosecution claims based on the finding that the underlying criminal proceeding did not terminate in Smith's favor; he also argues that because the defendants' conduct was unreasonable, Judge Foschio erred in finding a material issue of fact regarding qualified immunity.  Docket Item 70.  Both sides responded to each other on February 1, 2022, Docket Items 72 and 74, and both sides replied on February 15, 2022, Docket Items 76 and 77.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The court must review *de novo* those portions of a magistrate judge's recommendation to which a party objects.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R; the record in this case; the objections, responses, and replies; and the materials submitted to Judge

Foschio.  Based on that review and for the reasons that follow, the Court denies Smith's

motion and grants in part and denies in part the defendants' motion.[1]

## FACTUAL BACKGROUND[2]

Smith is a self-proclaimed "long-time critic of the Town of Lewiston police

department."  Docket Item 34-2 at ¶ 1.  On March 6, 2016, Smith left two messages on

the voicemail of Lewiston Police Chief Previte.  *Id.* at ¶ 2; Docket Item 41-1 at ¶ 2.

Smith says that he left the messages to complain about police misconduct during an

incident in a bar the year before and about other police behavior that he thought was

harassing and offensive.  Docket Item 34-2 at ¶¶ 2, 6.

The content of the messages is not in dispute:

**March 6, 2016, 8:00 a.m.**  Hey Previte.  It's Tom Smith.  I just had
somebody tell me that Officer Swicz said I was yelling at him yesterday
when I was at Tops Express.  What everybody here saw—I was on my
phone, talking on my phone.  You guys are a bunch of full of shit—you guys
got guns and badges and swore an oath to fucking be truthful and honest,
and what are you?  A bunch of liars, drunks, potheads, [gas thieves]
adulterers?  Come on, what else are you guys?  Because you are all going
be under fucking subpoena.  You're all going under fucking oath.  You are

---

[1] Judge Foschio also recommended granting the defendants' motion for
summary judgment on Smith's section 1983 claims against the Town of Lewiston and
against Lewiston Police Chief Previte and Lewiston Police Captain Penzotti in their
official capacities.  Docket Item 52 at 10-14.  Because Smith did not object to that
recommendation, *see* Docket Item 70, this Court need not review it, *see Thomas v. Arn*,
474 U.S. 140, 149-50 (1985).  In any event, this Court agrees with Judge Foschio that
those claims should be dismissed.

[2] The following facts are taken from the statements of undisputed facts and
accompanying exhibits filed by both sides in support of their motions for summary
judgment, as well as both sides' respective responses to those submissions.  *See*
Docket Item 34-2 (Smith's statement of undisputed facts); Docket Item 39-2 (the
defendants' statement of undisputed facts); Docket Item 41-1 (the defendants' response
to Smith's statement of undisputed facts); Docket Item 47-1 (Smith's response to the
defendants' statement of undisputed facts).

all gonna be there.  You're all gonna answer the questions.  You guys are dangerous.  You spit on the graves of soldiers that spent their lives and their physical capital to make sure that I had simple rights, constitutional rights.  And you guys don't give a shit about any—about that.  You people are bad, bad people.  I'm exposing every one of you for your that shit that you pulled.  Especially the Chief.  You're supposed to be the shining example to all these guys and what do you do?  You lie.  I've got you on tape lying.  Liar.  Chief Liar.  You're a liar.  Just remember God's looking down at you, you liar.  Maybe go back to that little bitch in the Falls and check out those little girls up there.  I heard all about that you fucking liar.

**March 6, 2016, 2:56 p.m.**  Brandon Hall does not intimidate me or scare me.  You have a beef with my family or want to destroy our family, bring it on!  I just got a three minute video of him staring me down in my front yard.  He just peeked over at me and locked eyes with me.  He wouldn't look away for ever.  Three minutes straight.  I even walked outside on my porch.  He wouldn't look away; staring me down.  He doesn't intimidate me.  You don't intimidate me.  You guys are liars.  You're full of shit.  You're bad for this country.  You're un-American.  I'll see you all in court.  I've got a right to free speech.  I don't break the law.  You guys are the bastards.  You guys are the people that destroy people.  You guys are the people who don't do their jobs.  You're liars.  You're con artists.  So, I'll keep that with me.  [Inaudible]  My whole family couldn't believe this guy staring me down.  I was watching him.  "He won't look away.  He won't look away.  He's trying to intimidate you."  Absolutely he was.  But he's not going to.  You guys can line up and try to destroy me.  That's the only way you're going to shut me up.  I'm going to be speaking the truth from the rooftops, Previte.  You're not fit to be Chief.  You lied to me.  You lied about me.  I've got you on tape lying about me.  You don't intimidate me at all.  And I'll be calling the FBI to let them know still what is going on.  Special agent, uh, I'll have to go look, what number he gave me and what his name is.  [Inaudible]  You guys are bad people, bad people.  See you at the next Town Board meeting.  Dishonest liar.

Docket Item 34-5 at ¶ 37.[3]

Previte asserts that around this time, though not necessarily on the same day,

Smith left him two to four other phone messages stating the "[s]ame type of thing."

---

[3] The text of both messages is taken verbatim from a transcript prepared by Smith.  *See* Docket Item 34-5 at ¶ 37.  The defendants have not objected to or disputed the accuracy of the transcripts.

Docket Item 39-7 at 15-17.[4]  Previte says that in one of those calls, Smith also talked about "taking the badge off and going out in the field," presumably to settle things physically.  *Id.*  In fact, Previte says that Smith "also was pushing the idea or wanted to have a cage match."  *Id.*

Previte says that he provided the two recorded calls[5] to an assistant district attorney, Docket Item 39-2 at ¶ 39, who told him that the calls provided enough probable cause to get an arrest warrant, Docket Item 41-1 at ¶ 14.  So about two days later, Lewiston Police Captain Penzotti prepared and filed a misdemeanor information charging Smith with aggravated harassment in the second degree under New York Penal Law § 240.30(1).  Docket Item 34-2 at ¶ 7; Docket Item 41-1 at ¶ 7; Docket Item 34-13 at 4.  The information referred only to the two voice messages transcribed above.

---

[4] The defendants assert that because of an error in the phone system, these other recordings were not saved.  Docket Item 41-1 at ¶ 10.

[5] The defendants' statement of undisputed facts says that the assistant district attorney listened to "all the calls on the machine."  Docket Item 39-2 at ¶ 39.  But neither that statement nor Previte's deposition is clear about whether that included only the two recorded messages or the other messages as well.  Smith disputes that the assistant district attorney listened to all the calls, asserting that "[t]he defendants heavily edited the phone messages they retrieved to leave out substantive complaints of official police misconduct and to create the false impression that [Smith's] complaints were baseless."  Docket Item 47-1 at ¶ 39.

The basis for the assertion that the messages were "heavily edited" appears to be Previte's summary of the two recorded messages in his affidavit that was attached to the information and submitted to the judge who issued the warrant.  *Id.* (citing Smith's affidavit); *see also* Docket Item 34-1 at 2 (describing the initiation of proceedings).  That has nothing to do with the calls that were saved, and Smith does not contest that those calls were recorded and therefore available for the assistant district attorney to hear.  Because Smith himself prepared and submitted the transcripts of the two calls, this Court assumes that the assistant district attorney listened to only those calls.  But, for the reasons stated below, the Court's resolution of the issue of arguable probable cause does not hinge on what calls the assistant district attorney listened to or even whether he listened to any calls.

Docket Item 34-13 at 4.  Based on the misdemeanor information, the defendants also applied for and obtained an arrest warrant in the Lewiston Town Court.  Docket Item 34-2 at ¶ 11; Docket Item 41-1 at ¶ 11; *see also* Docket Item 34-13 at 2.

 That same day, Smith was arrested, arraigned, and taken to the Niagara County Holding Center.  Docket Item 34-2 at ¶¶ 13, 17, 18; Docket Item 41-1 at ¶ 13.  Smith says that he was held there for four days, strip-searched, and forced to undergo a tuberculosis test.  Docket Item 34-2 at ¶¶ 18-19.

Smith moved to dismiss the information on several grounds, *id.* at ¶ 20, and on October 4, 2016, the Lewiston Town Court dismissed the charge, Docket Item 34-13 at 31.  Smith says that the charge was dismissed on the merits.  Docket Item 34-2 at ¶ 28.  The defendants say that the charge was dismissed for technical reasons and not on the merits.  Docket Item 41-1 at ¶ 28; Docket Item 39-2 at ¶ 54.  The order dismissing the information is not so clear:

> The defendant having moved for dismissal . . . and [with] no opposition from the Assistant District Attorney, James P. Hewitt, III, Esq., and due consideration having been had thereon, it is hereby:
>
> ORDERED that the information filed herein against the defendant and charging him with aggravated harassment in the second degree is dismissed with prejudice.

Docket Item 34-13 at 31.  In the transcript of the proceedings, the court noted that the assistant district attorney had, until that day, opposed the motion to dismiss.  *Id.* at 48.  It is unclear why the prosecutor withdrew his opposition, but the record shows that the parties had discussed the possibility of resolving the case by agreement.  *Id.* at 38.

## LEGAL PRINCIPLES

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant—that is, the party seeking summary judgment—must demonstrate that there is no disputed material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant may satisfy this burden by relying on evidence in the record, "including depositions, documents, . . . [and] affidavits," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing] to an absence of evidence to support an essential element of the nonmoving party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex*, 477 U.S. at 322-23); *see* Fed. R. Civ. P. 56(c)(1)(B). Once the movant has satisfied its initial burden, "the nonmoving party must come forward with specific facts" showing that there is a genuine dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks omitted). If the nonmovant fails to do so, the court may grant summary judgment. *See Celotex*, 477 U.S. at 322-23.

A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he court must view the evidence in the record in the light most favorable to the non-moving party" and must draw "all reasonable inferences in that party's favor." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001). But "conclusory statements, conjecture, or speculation by

the party resisting the motion will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir. 1996).

## DISCUSSION

## I.   FALSE ARREST CLAIM

Judge Foschio recommended denying both sides' motions for summary judgment on Smith's section 1983 false arrest claim. Docket Item 52 at 34. He found that the "warrant for [Smith's] arrest was not supported by probable cause because the conduct for which [Smith] was arrested did not satisfy" the statute under which he was charged that was "in effect at the time of [the] arrest." *Id.* at 20. But Judge Foschio nevertheless recommended denying both sides' motions because "a question of fact [exists] as to whether or not [an error in drafting the information] was a 'reasonable mistake' supporting qualified immunity based on a determination that [Smith's] arrest and prosecution were supported by 'arguable probable cause.'" *Id.* at 34.

The error to which Judge Foschio referred involved the aggravated harassment statute under which Smith was charged.[6]   In the factual section of the charging

---

[6] Smith asserts that he was "charged with violating a non-existent statute." Docket Item 34-4 at ¶ 28. That is incorrect. The information charged Smith with violating section 240.30(1), a law that was on the books and that had not been declared unconstitutional. *See* Docket Item 34-13 at 4 ("I accuse Thomas Smith . . . and charge that on or about the 6th day of March[] 2016 . . . said DEFENDANT did intentionally and unlawfully commit the misdemeanor of Aggravated Harassment in the Second Degree contrary to the provisions of Section 240.30 subdivision 1[] of the Penal Law of the State of New York." (bold typeface omitted)). The error in the information was quoting unconstitutional language from the prior version of section 240.30(1) in the first part of the factual predicate section. *See id.* (noting that "a person is guilty of aggravated harassment in the second degree when, with intent to harass, annoy, threaten or alarm another person, he: (1) communicates, or causes a communication to be initiated by mechanical or electronic means or otherwise, with a person, anonymously or otherwise,

information, Penzotti tracked language from a prior version of section 240.30(1)(a),

Docket Item 34-13 at 4, which had been declared unconstitutional two years earlier,[7]

Docket Item 34-2 at ¶ 21; Docket Item 41-1 at ¶ 21; *see People v. Golb*, 23 N.Y.3d 455,

467, 15 N.E.3d 805, 813 (2014).  Judge Foschio concluded that "there is no question

that the arrest . . . and prosecution were without probable cause because [Smith] was

charged with second degree aggravated harassment under a prior version of §

240.30[1](a)[] that was declared unconstitutional and rewritten almost two years before

the arrest, such that the putative statutory provision . . . [that Smith] was charged with

violating was no longer in effect and, therefore, [Smith] could not reasonably be held to

have committed the charged offense."  Docket Item 52 at 31.

An arrest is justified even without a warrant "if there is 'probable cause when the

defendant is put under arrest to believe that an offense has been . . . committed.'"

*United States v. Rodriguez*, 568 F. Supp. 2d 396, 398 (S.D.N.Y. 2008) (quoting *United

States v. Cruz*, 834 F.2d 47, 50 (2d Cir. 1987)).  Therefore, the relevant inquiry is not

whether the *arrest warrant* was supported by probable cause or whether Penzotti's error

in drafting the *charging information* was a reasonable mistake.  Rather, it is whether

Smith's arrest—*for any offense*—was supported by probable cause.  *See Dickerson v.

Napolitano*, 604 F.3d 732, 752 (2d Cir. 2010) ("[P]robable cause is based on the facts

warranting arrest and not the statute pursuant to which a plaintiff was charged.  That the

---

by telephone, or by telegraph, mail or any other form of written communication, in a
manner likely to cause annoyance or alarm").

[7] The defendants assert that Captain Penzotti simply cited the incorrect
subsection accidentally.  *See* Docket Item 39-2 at ¶ 52.  Whether or not that is true does
not affect this decision.

actual charges were brought under a different statute does not defeat a finding of probable cause." (citations omitted)); *Jaegly v. Couch*, 439 F.3d 149, 153-54 (2d Cir. 2006) ("The [Supreme] Court thus rejected the view that probable cause to arrest must be predicated upon the offense invoked by the arresting officer . . . . Following *Devenpeck* [*v. Alford*, 543 U.S. 146 (2004)], we conclude here that a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest.  Stated differently, when faced with a claim for false arrest, we focus on the validity of the *arrest*, and not the validity of each charge." (emphasis in original)).

Moreover, an arresting officer is entitled to qualified immunity if he can establish "arguable probable cause"—that is, "if either[:] (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004).  That test asks whether "the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Id.* (citation and internal quotation marks omitted).  "[A] probable cause determination does not require proof beyond a reasonable doubt; it is the mere possibility of criminal activity, based on the totality of the circumstances, that satisfies the Fourth Amendment.  As such, the standard for establishing probable cause is not a particularly stringent one."  *Daniels v. D'Aurizo*, 564

F. Supp. 2d 194, 197-98 (W.D.N.Y. 2008) (citation and internal quotation marks omitted).

So the precise question here is not whether the defendants had actual probable cause to arrest Smith for, and charge him with, the crime with which he was charged in the information.  Rather, it is whether the defendants had arguable probable cause to arrest Smith for any offense.  The answer is that they did.  And because this Court therefore can resolve this claim on qualified immunity grounds, it need not decide whether the arrest was in fact supported by probable cause.

At the time of Smith's arrest, New York Penal Law § 240.30(2) provided that a person is guilty of aggravated harassment in the second degree when, "[w]ith intent to harass or threaten another person, he or she makes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication."[8]  Based on then-existing New York law, a reasonable officer might well have concluded that the calls here were intended to harass without any legitimate purpose to communicate.  *See New York v. Neco*, 2014 WL 4637959, at *3 (N.Y. Crim Ct., N.Y. Cnty. Sept. 12, 2014) ("Determining whether an information charging a violation of § 240.30(2) sufficiently pleads the 'no legitimate purpose' element requires an examination of the context, timing and number of telephone calls, their content, if any, and whether those calls continued after a demand that they cease.").

The first transcribed message began with a passing complaint—that "somebody [told Smith] that Officer Swicz said [that Smith] was yelling at [Swicz]," Docket Item 34-5

---

[8] The defendants argue Penzotti intended to charge Smith under this subsection.  *See* Docket Item 39-14 at 18.  Again, whether or not that is true is of no moment.

at ¶ 37, something that presumably was untrue.  But Smith then immediately pivoted to an extended rant and *ad hominem* attack that continued through both calls.  Smith referred to Chief Previte as "Chief Liar" and his officers as "full of shit," "liars, drunks, potheads, [gas thieves, and] adulterers"; he called them "dangerous" and "bad, bad people"; he accused them of "spit[ting] on the graves of soldiers."  *Id*.  Smith told Previte, "Just remember God's looking down at you, you liar.  Maybe go back to that little bitch in [Niagara] Falls and check out those little girls up there.  I heard all about that you fucking liar."  *Id.*

Based on all that, a reasonable officer might well conclude that Smith's calls met what New York's highest court has found to be sufficient to violate the law.  *See People v. Shack*, 86 N.Y.2d 529, 538, 658 N.E.2d 706, 712 (1995) ("Measuring the phrase 'no purpose of legitimate communication' by these standards, we are satisfied that the phrase, notwithstanding its subjective quality, would be understood to mean the absence of expression of ideas or thoughts other than threats and/or intimidating or coercive utterances."); *People v. Stuart*, 100 N.Y.2d 412, 428, 797 N.E.2d 28, 41 (2003) (concluding that under another statute, "the phrase 'no legitimate purpose' means the absence of a reason or justification to engage someone, other than to hound, frighten, intimidate or threaten").[9]  And it provides a reasonable basis—even if mistaken—for the

---

[9] New York courts have found that the conduct criminalized by this statute need not include an actual threat.  *See, e.g., New York v. Spruill*, 2015 WL 5570037, at *5 (N.Y. Crim. Ct., N.Y. Cnty. Sept. 22, 2015) (finding an information charging violation of this subsection sufficient where the communications were alleged to be insulting, degrading and, on one occasion, threatening, even if not a threat of violence); *New York v. Coyle*, 719 N.Y.S.2d 818, 819 (N.Y. Dist. Ct., Nassau Cnty. 2000) ("Although the supporting deposition does not precisely set forth the one-half-hour period that is designated in the accusatory instrument itself, it nonetheless demonstrates that defendant's claimed criminal conduct consists of four unwelcome calls made within a

defendants to believe that Smith was not engaging in protected speech such that they had probable cause to arrest him.[10]  *Cf. Novak v. City of Parma*, 33 F.4th 296, 305 (6th Cir. 2022) ("Whether these actions . . . are protected speech is a difficult question. . . . But while probable cause here may be difficult, qualified immunity is not."); *Jones v. Treubig*, 963 F.3d 214, 230-31 (2d Cir. 2020) (noting that qualified immunity applies in instances of reasonable mistakes of law, fact, and mixed questions of law and fact).

What is more, a lawyer, Niagara County Assistant District Attorney Peter Wydysh, apparently listened to the transcribed phone calls and recommended charging Smith.  *See* Docket Item 34-11 at 13; *see also Novak*, 33 F.4th at 305 (noting officers' belief that there was probable cause to be reasonable, even if mistaken, when officers were reassured by the city's law director and judges who issued arrest warrants).  For that reason as well, a reasonable officer might have concluded that there was probable

---

very short period of time on one day.  Moreover, there are ample facts in the supporting deposition—the repetition of the calls, the irate, aggressive yelling, the defendant's beginning to follow the complaining witness—from which, if true, defendant's criminal intent can be inferred." (citation omitted)).  In fact, the plain language of the statute apparently includes telephone calls regardless of whether a conversation occurs or any words are expressed.  *See* N.Y. Penal Law § 240.30(2).

[10] Previte asserts that an arrest warrant was sought because he had received numerous harassing messages that were becoming more threatening in nature and that Smith would not state the purpose of the calls.  Docket Item 39-15 at ¶ 6; Docket Item 39-7 at 16-17 ("[I]n the one phone call he specifically again said the same that he did later while we were at the gas station about taking the badge off and going out in the field.  And he also was pushing the idea or wanted to have a cage match, is how he put it on the machine.").  If that is true, it might well establish probable cause for the arrest.  But Smith denies that any of his calls or interactions were threatening in nature or meant to harass.  *See, e.g.*, Docket Item 47-1 at ¶¶ 6, 7, 12, 13, 18.  Regardless, because a reasonable officer might well believe that the transcribed messages at issue alone satisfy the probable cause standard, the defendants are entitled to qualified immunity on Smith's false arrest claim.

cause to arrest Smith.  For all those reasons, the defendants are entitled to qualified immunity.[11]

Smith says that the defendants were motivated by actual malice when they arrested and prosecuted him, *see, e.g.*, Docket Item 34-1 at 3 (arguing that malice is established as a matter of law unless the defendants can reasonably explain why they "charged and continued the prosecution of [Smith] for the crime of engaging in pure political speech critical of police misconduct"); in other words, he implies that if the same call had been made to someone other than the police chief, he would not have been arrested and prosecuted, *id.*  And the idea that the police might use the law to serve their own private purposes is troubling, to say the least.  But the Supreme Court has made clear that if an arrest is objectively—or even arguably—supported by probable cause, the officers' subjective intent in making the arrest is of no moment.  *See Bond v. United States*, 529 U.S. 334, 338 n.2 (2000) ("[S]ubjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment."); *see also Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) ("In deciding [for purposes of qualified immunity] whether an officer's conduct was objectively reasonable . . ., we look to the information possessed by the officer at the time of the arrest, but we do not consider the subjective intent, motives, or beliefs of the officer." (citation and internal quotation marks omitted)).  In light of that law, this Court has little choice other than to find that qualified immunity precludes Smith's false arrest claim.

---

[11] As noted above, *see supra* at 5 n.5, Smith appears to contest that Wydysh listened to all the calls and may contest that he listened to any.  In any event, regardless of whether Wydysh listened to any calls or gave any advice to the arresting officers, for the reasons stated above those officers had arguable probable cause to arrest Smith.

*See Novak*, 33 F.4th at 312 (finding, in case where officers charged plaintiff with disrupting police functions after he created "The City of Parma Police Department" Facebook page allegedly to "mock[] government officials," that "granting the officers qualified immunity does not mean their actions were justified or should be condoned," but nevertheless affirming based on qualified immunity "[b]ecause the law compels it").

In sum, having reviewed the issue *de novo*, this Court finds that at the very least, reasonably competent officers could disagree about whether there was probable cause to arrest Smith.  Stated differently, a reasonable officer might well have believed that the above facts were sufficient to establish that Smith violated the law and therefore could be arrested.[12]  The Court therefore respectfully disagrees with Judge Foschio and concludes that Smith's false arrest claim cannot proceed.  For the reasons stated above, the Court grants the defendants' motion for summary judgment on that claim based on qualified immunity.

## II.   MALICIOUS PROSECUTION CLAIM

Under both New York State law and the Fourth Amendment, a malicious prosecution claim requires: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff; (2) the termination of the proceeding in favor of the accused; (3) the absence of probable cause for the criminal proceedings; and (4) actual malice.  *Kee v. City of New York*, 12 F.4th 150, 161-62 (2d Cir. 2021).  To

---

[12] The fact that the arrest was based on an arrest warrant also may support the finding of qualified immunity.  But Smith says that the judge who issued the warrant was not given the entire recorded calls, Docket Item 47-1 at ¶ 41, and so this Court does not reach the issue of whether that raises an issue of fact precluding summary judgment on that ground.

succeed on a Fourth Amendment malicious prosecution claim, the plaintiff also must establish "some deprivation of liberty consistent with the concept of 'seizure' . . . to ensure that the § 1983 plaintiff has suffered a harm of constitutional proportions." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995).

Judge Foschio concluded that Smith failed to establish a triable issue of fact as to whether the underlying criminal proceedings terminated in his favor.  Docket Item 52 at 22-25.  Therefore, Judge Foschio recommended granting the defendants' motion for summary judgment on this claim.  Alternatively, Judge Foschio recommended denying both sides' motions for summary judgment with regard to the elements of probable cause and actual malice. *Id.* at 25-27.

Upon *de novo* review, and based in part on precedent decided after Judge Foschio's R&R, this Court finds that issues of fact preclude summary judgment in either side's favor.  The Court analyzes each contested element[13] of this claim in turn.

### A.    Termination of Proceedings in Smith's Favor

After Judge Foschio issued his R&R, the Supreme Court decided *Thompson v. Clark*, 142 S. Ct. 1332, 1336 (2022), which resolved a circuit split about how to apply the favorable-termination element in a section 1983 claim alleging malicious prosecution.  Prior to *Thompson*, for a federal malicious prosecution claim to succeed in the Second Circuit, the favorable-termination element required some affirmative indication of the plaintiff's innocence in the underlying proceeding.  *Lanning v. City of*

---

[13] The parties do not dispute that the defendants initiated a criminal proceeding against Smith and that Smith was subjected to a constitutional seizure.  *See* Docket Item 52 at 21.

*Glens Falls*, 908 F.3d 19, 25 (2d Cir. 2018).  In *Thompson*, however, the Supreme Court

deciphered "the elements of the most analogous tort as of 1871 when § 1983 was

enacted," and concluded that "[i]n most American courts that had considered the

question[,] . . . the favorable termination element of a malicious prosecution claim was

satisfied so long as the prosecution ended without a conviction."  *Thompson*, 142 S. Ct.

at 1337-38.  Indeed, the Court noted that several courts during that era employed

identical language: they asked only whether the prosecution was "*at an end*."  *Id.* at

1338-39 (emphasis in original) (collecting cases).

Based on that historical analysis, the Supreme Court concluded that "a Fourth

Amendment claim under §1983 for malicious prosecution does not require the plaintiff to

show that the criminal prosecution ended with some affirmative indication of innocence."

*Id.* at 1341.  Instead, "[a] plaintiff need only show that the criminal prosecution ended

without a conviction."  *Id.*  That standard is clearly met here: the judge dismissed the

action with prejudice.[14]  *See* Docket Item 34-13 at 31.  Therefore, in light of *Thompson*,

---

[14] In his analysis of this element, Judge Foschio referred to the parties' disagreement about whether the defendants were precluded from re-filing any charges against Smith and concluded that because Smith might possibly be prosecuted under a new charging instrument, he failed to establish that the underlying criminal proceeding terminated in his favor.  Docket Item 52 at 24-25.  But the case cited in the R&R in support of that conclusion does not preclude a malicious prosecution claim when a plaintiff "might be prosecuted again in the future, even successfully."  *See Spak v. Phillips*, 857 F.3d 459, 465 (2d Cir. 2017).  While the Second Circuit recognized the Supreme Court's "warn[ings] against the possibility of parallel civil and criminal litigation arising from the state's prosecution of the same defendant for the same criminal offense," it also construed such warnings to pertain to "duplicative litigation on issues of guilt and probable cause arising out of *the same accusatory instrument*."  *Id.* (emphasis added).  It did not construe Supreme Court precedent as preventing a plaintiff from bringing a suit when "the charges against him were dismissed in a manner that did not preclude future prosecution under a different charging instrument."  *Id.*

Additionally, this Court does not believe that *Thompson* undermines *Spak* in any way.  While in *Thompson* the Supreme Court referred to some authority from 1871 that

Smith has satisfied this element of his federal malicious prosecution claim as a matter of law.

In contrast, under New York State law, a prosecution is favorably terminated when it cannot be brought again and when its termination is not inconsistent with the innocence of the accused.  *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195-96, 734 N.E.2d 750, 753 (2000).  In other words, "the absence of a conviction is not itself a favorable termination." *Martinez v. City of Schenectady*, 97 N.Y.2d 78, 84, 761 N.E.2d 560, 564 (2001).  For example, a dismissal does not amount to a favorable termination "if . . . the prosecution [is] abandoned pursuant to a compromise with the accused.  Indeed, it is hornbook law that where charges are withdrawn or the prosecution is terminated . . . by reason of a compromise into which [the accused] has entered voluntarily, there is no sufficient termination in favor of the accused." *Smith-Hunter*, 95 N.Y.2d at 196-97, 734 N.E.2d at 753 (citation and internal quotation marks omitted); *Martinez*, 97 N.Y.2d at 84, 761 N.E.2d at 564; *Cantalino v. Danner*, 96 N.Y.2d 391, 395, 754 N.E.2d 164, 167 (2001).

In this case, it is unclear whether the criminal proceedings were favorably terminated under New York State law.  The order dismissing the proceeding simply states that the information was dismissed with prejudice on Smith's motion with no opposition from the prosecution.  Docket Item 34-13 at 31.  Smith's counsel presented

---

required the underlying proceeding be "'disposed of in such a manner' that [the prosecution] 'cannot be revived,'" *Thompson*, 142 S. Ct. at 1338-39 (quoting *Clark v. Cleveland*, 6 Hill 344, 347 (N.Y. Sup. Ct. 1844)), this Court interprets the quoted language as consistent with *Spak*'s analysis of past precedent—that is, as referring to prosecutions arising out of the same accusatory instrument.  Therefore, whether the charge could have been re-filed under a different accusatory instrument is not relevant here.

several arguments for dismissal in that motion, including that: (1) the information was defective on its face; (2) the underlying conduct was protected by the First Amendment; and (3) depending on the availability of certain audio recordings, the charge should be dismissed based on spoliation of evidence and due process grounds.  *Id.* at 25-28.

The transcript from the proceedings provides no clarity; on the contrary, it only adds confusion.[15]  In dismissing the case, the town justice noted that the prosecution had "actually up until today" opposed Smith's motion.  *Id.* at 48.  It is not clear from the record why the prosecution withdrew its opposition, but it does appear that Smith's counsel and the prosecution at least at some point had "discussion[s] about possible resolution."  *Id.* at 38.

Based on those facts, it is possible that the proceedings were dismissed because the prosecution and Smith agreed for some reason that the prosecution would not object to dismissal and would effectively abandon the prosecution.  On the other hand, it also is possible that the charge was dismissed on its merits.  Therefore, there is a material issue of fact on that element of Smith's state law malicious prosecution claim.

In sum, the underlying proceedings were terminated in Smith's favor for the purpose of his federal law malicious prosecution claim, but there is a material issue of fact as to this element under state law standards.

---

[15] The confusion here may illustrate why the Court in *Thompson* said that "[t]he question of whether a criminal defendant was wrongly charged does not logically depend on whether the prosecutor or court explained why the prosecution was dismissed.  And the individual's ability to seek redress for a wrongful prosecution cannot reasonably turn on the fortuity of whether the prosecutor or court happened to explain why the charges were dismissed."  *Thompson*, 142 S. Ct. at 1340.

B.     **Absence of Probable Cause**

Judge Foschio alternatively concluded that the defendants' motion for summary judgment should be denied with regard to probable cause.  Docket Item 52 at 25-26.  Upon *de novo* review, this Court finds that there is an issue of fact that precludes granting either side summary judgment as to this element.

Whether Smith can show that the defendants did not have probable cause to commence the underlying proceeding against him presents a question different from whether the officers had probable cause to arrest him.  *See Laboy v. Ontario County*, 102 F. Supp. 3d 490, 502 (W.D.N.Y. 2015) ("Plaintiff also conflates an alleged lack of probable cause for his arrest with an alleged lack of probable cause for his prosecution."), *vacated in part on other grounds*, 668 F. App'x 391 (2d Cir. 2016).  "Probable cause to prosecute exists where there are facts and circumstances [that] would lead a reasonably prudent person in like circumstances to believe [that the criminal defendant is] guilty."  *Stiggins v. Sullivan*, 2006 WL 8456459, at *2 (W.D.N.Y. Mar. 31, 2006) (citation and internal quotation marks omitted).

Along the same lines, an officer is entitled to qualified immunity "if there was 'arguable probable cause' at the time the criminal proceeding commenced and continued.  In assessing arguable probable cause, the inquiry is whether *any* reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that the challenged action was lawful."  *Antic v. City of New York*, 740 F. App'x 203, 205 (2d Cir. 2018) (summary order) (emphasis in original) (citations and internal quotation marks omitted); *see also Creese v. City of New York*, 815 F. App'x 586, 590 (2d Cir. 2020) (summary order) ("In the context of a malicious prosecution claim, arguable probable cause exists where . . . it was not

manifestly unreasonable for [the defendant officer] to charge [the plaintiff] with the crime in question." (citation and internal quotation marks omitted)).

Here, the charging information referred only to the two transcribed messages and charged Smith with violating New York Penal Law § 240.30(1), that is, "[w]ith intent to harass another person, . . . communicat[ing] . . . a threat to cause physical harm to, or unlawful harm to the property of, such person . . . [when he knew or reasonably should have known] that such communication [would have caused the recipient] to reasonably fear harm to such person's physical safety or property." *See* N.Y. Penal Law § 240.30(1)(a);[16] *see also People v. Venturo*, 51 Misc.3d 216, 220, 27 N.Y.S.3d 790, 793 (N.Y. Crim. Ct., N.Y. Cnty. 2015) (analyzing N.Y. Penal Law § 240.30(1)(a) and noting that states do not violate the First Amendment by criminalizing true threats to engage in physical violence). So the question is whether a reasonable officer would believe that Smith could have been found guilty of violating that law. *Stiggins*, 2006 WL 8456459, at *2. Alternatively, the qualified immunity defense asks whether any reasonable officer could have determined that prosecuting Smith under section 240.30(1) was lawful or, conversely, whether prosecuting him under this subsection was manifestly unreasonable. *Creese*, 815 F. App'x at 590.

The answer to those questions is by no means clear. On the one hand, parts of the transcribed voicemails suggest that Smith wanted to resolve his issues through lawful means, such as at the next town board meeting or through a court of law. *See*

---

[16] The fact that language from a prior version of the statute was cited in the factual section of the information and that the charging officer allegedly intended to cite a different subsection of the statute obscures this ultimate question: that is, whether there was probable cause to commence prosecution against Smith under the statute charged—the current version of § 240.30(1).

Docket Item 34-5 at ¶ 37 ("[Y]ou are all going [to] be under . . . subpoena. . . . See you

at the next Town Board meeting.").  On the other hand, Smith stated, "You have a beef

with my family or want to destroy our family, bring it on! . . . You guys can line up and try

to destroy me.  That's the only way you're going to shut me up."  *Id.*

And while those remarks may not constitute a physical threat *per se*, Previte

alleges that he had received other threats from Smith as well.  Docket Item 39-2 at

¶¶ 15, 18.  For example, Previte asserts that another voice message left around the

same time referred to a fight and cage match.  Previte also says that Smith would

approach him and other officers outside work and engage in threatening behavior.

Docket Item 39-15 at ¶ 9 ("He would follow police vehicles, and when the officers would

exit the vehicles, he would yell at the officers for no apparent reason.  He had engaged

in this conduct in my presence and on at least one occasion when he approached me

while I was pumping gas at a local gas station.  He threatened me by telling me to take

off my badge and go into a nearby field to settle this.  He also tried to engage me in a

'cage match' during one of his phone calls.  This action never stopped until the time he

was arrested for aggravated harassment.").

The information did not charge Smith with this behavior or for making those

statements, and Smith denies making any threats.  But those allegations raise a

material issue of fact that might lead a jury to conclude that the defendants reasonably

believed the transcribed voicemail messages were threats and that Smith therefore was

guilty of violating section 240.30(1)(a).  *See United States v. Santos*, 801 F. App'x 814,

816 (2d Cir. 2020) (summary order) ("A statement rises to the level of true threat if an

ordinary, reasonable recipient who is familiar with the context of the [communication]

would interpret it as a threat of injury." (citation and internal quotation marks omitted)). And "[w]hether [the] words used are a true threat is generally best left to the triers of fact." *Id.* (citation and internal quotation marks omitted). Therefore, there is a material issue of fact as to whether the defendants had probable cause or arguable probable cause to prosecute Smith under section 240.30(1).[17]

### C.      Malice

Judge Foschio concluded that there was an issue of fact about whether the prosecution was motivated by actual malice. Docket Item 52 at 26-27. Smith objects to that conclusion because "it is undisputed that probable cause did not exist for [his] arrest and that [he] was wrongfully arrest[ed] for exercising his First Amendment rights. With the absence of probable cause, malice in this case [is] inferred." Docket Item 70 at 9 (citations omitted); *cf. Manganiello v. City of New York*, 612 F.3d 149, 163 (2d Cir. 2010) ("[A] lack of probable cause generally creates an inference of malice." (citation and internal quotation marks omitted)). Smith also says that the defendants "deliberately omitted [in the affidavits supporting the information] certain statements from the . . . phone recordings in a careful effort to bolster their stance that [Smith] violated § 240.30[1](a)." Docket Item 70 at 9. And Smith asserts that the "defendants did not fully inform the [town] court [that] the statute had been repealed [sic]" even though they knew it had been "repealed [sic]." Docket Item 47-1 at ¶ 52.

---

[17] The information also states, "On the above said dates and times, the above said defendant did, with intent to harass, annoy, *threaten and alarm* Chief Frank Previte." Docket Item 34-13 at 4 (emphasis added). And the deposition accompanying the information makes clear that that Previte found Smith's tone to be "very aggressive." *Id.* at 5.

For all the reasons outlined above, this Court finds that there is a question of fact as to whether the prosecution was supported by probable cause and therefore whether the prosecution was commenced and continued with malice.  *See Rounseville v. Zahl*, 13 F.3d 625, 631 (2d Cir. 1994) ("New York law considers the lack of probable cause and the presence of malice closely related. . . . Thus, our conclusion that the lack of probable cause presents a jury question likewise suggests the existence of malice cannot be resolved through summary judgment.").  And this Court agrees with Judge Foschio that Smith has not otherwise shown that there is no genuine issue of fact as to whether the prosecution was motivated by malice.  *See* Docket Item 52 at 25-26.

In sum, this Court finds that there are material issues of fact as to several essential elements of Smith's federal and state malicious prosecution claims and therefore denies both sides' motions for summary judgment on those claims.[18]

## III.    FIRST AMENDMENT CLAIM FOR RETALIATORY PROSECUTION

To sustain a claim for First Amendment retaliation, a plaintiff must demonstrate that: (1) he has a right protected by the First Amendment; (2) the defendants' actions were motivated or substantially caused by his exercise of that right; and (3) the defendants' actions effectively chilled the exercise of his First Amendment right.  *Curley*

---

[18] In recommending dismissal of the section 1983 claims against the Town of Lewiston, Judge Foschio did not address the different standard used to assess municipal liability for state law claims.  *See* Docket Item 52 at 10-13; *see also Buari v. City of New York*, 530 F. Supp. 3d 356, 409 (S.D.N.Y. 2021) ("[U]nlike cases brought under § 1983, municipalities may be liable for the common law torts, like . . . malicious prosecution, committed by their employees under the doctrine of *respondeat superior*." (citation and internal quotation marks omitted)).  The parties did not address this in their objections to the R&R.  But because Smith's state law malicious prosecution claim against the individual defendants survived, his claim against the Town of Lewiston survives.

v. Village of Suffern, 268 F.3d 65, 73 (2d Cir. 2001).  In addition, when a plaintiff asserts

a claim of retaliatory prosecution[19] under section 1983, the plaintiff also must plead and

prove the absence of probable cause as an element of the claim.  Hartman, 547 U.S. at

265-66.

Judge Foschio concluded that summary judgment for either side was not

warranted on Smith's First Amendment retaliatory prosecution claim.  Docket Item 52 at

28-34.  More specifically, he found that even though Smith satisfied all elements of the

claim, there was a material issue of fact as to whether the defendants are entitled to

qualified immunity.  Id.  The defendants object, arguing that because the conduct

underlying the prosecution was not protected by the First Amendment, they are entitled

to summary judgment.[20]  Docket Item 69 at 9-10.  But that argument asks the Court to

decide disputed facts and to draw inferences in the defendants' favor.

For example, the defendants argue that Smith admitted verbally attacking Previte

during the calls and that Smith told his therapist that he threatened the police.  Docket

Item 69 at 9-10.  But Smith adamantly denies that he attacked or threatened anyone,

and the therapist's report might be mistaken or might simply state how the therapist

---

[19] Judge Foschio concluded that Smith raised a First Amendment retaliatory
prosecution claim rather than a First Amendment retaliation claim.  Docket Item 52 at
28.  A retaliatory prosecution claim requires Smith to establish a lack of probable cause
to prosecute in addition to the elements of a First Amendment retaliation claim.
Hartman v. Moore, 547 U.S. 250, 260-63 (2006).  Smith seems to agree with Judge
Foschio's reading of the claim he raised.  See Docket Item 70 at 7 ("As a result,
Plaintiff's motion for summary judgment on his claims of False Arrest and First
Amendment Retaliatory Prosecution should be granted.").

[20] To the extent that Smith also objects to Judge Foschio's recommendation, see
Docket Item 70 at 7, this Court concludes that summary judgment is not appropriate for
all the reasons stated below.

interpreted Smith's words.  Furthermore, a jury certainly could conclude that at least some of Smith's words—for example, complaining about what he perceived as inappropriate police conduct—was protected by the First Amendment.  *See Smith v. Campbell*, 782 F.3d 93, 100 (2d Cir. 2015) (finding that plaintiff "had engaged in protected speech by complaining about [a police officer's] conduct").

Ultimately, Smith's claim likely will turn on whether the prosecution was supported by probable cause or arguable probable cause.  *Mangino v. Inc. Vill. of Patchogue*, 808 F.3d 951, 956 (2d Cir. 2015) ("[A]n individual does not have a right under the First Amendment to be free from a criminal prosecution supported by probable cause, even if that prosecution is in reality an unsuccessful attempt to deter or silence criticism of the government." (citation and internal quotation marks omitted)).  And because this Court has found that there are material issues of fact regarding those issues, the Court denies both sides' motions for summary judgment on this claim as well.

## CONCLUSION

For the reasons stated above, this Court accepts in part and rejects in part Judge Foschio's recommendations.  Smith's motion for summary judgment, Docket Item 34, is DENIED, and the defendants' motion, Docket Item 39, is GRANTED in part and DENIED in part.  Smith's false arrest claim is dismissed, but his malicious prosecution claims and First Amendment retaliatory prosecution claim may proceed.  **The parties shall contact the Court within 30 days of the date of this order to schedule a status conference to set a trial date.**

SO ORDERED.

Dated:      August 11, 2022
            Buffalo, New York

                              _/s/ Lawrence J. Vilardo_____
                              LAWRENCE J. VILARDO
                              UNITED STATES DISTRICT JUDGE