UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THOMAS M. SMITH,

                Plaintiff,

-vs-	Case No. 1:17-cv-00959-LJV-LGF

TOWN OF LEWISTON,
FRANK PREVITE, individually and in his official
capacity as Chief of Police of the Town of Lewiston,
JOHN PENZOTTI, individually and in his official
capacity as a Town of Lewiston Police Captain,

                Defendants.
_____


# DEFENDANTS' PRETRIAL MEMORANDUM OF LAW


**GOLDBERG SEGALLA LLP**
Joseph S. Brown, Esq.
Christopher Maugans, Esq.
*Attorneys for Defendants*
665 Main Street
Buffalo, New York 14203
(716) 566-5400
joebrown@goldbergsegalla.com
cmaugans@goldbergsegalla.com

35513614.v1

**PROPOSED UNCONTROVERTED FACTS**

As instructed by the Court's Pre-Trial Order dated January 13, 2023 (Docket No. 89), Defendants Frank Previte and John Penzotti state that they have no specific objections to Plaintiff's Proposed Uncontroverted Facts. Defendants supplement what they maintain are additional uncontroverted facts by reference to Defendants' Statement of Undisputed Facts Pursuant to Local Rule 56.1 (Docket No. 39-2) submitted in connection with their summary judgment motion.

**CLAIMS REMAINING IN THE CASE**

Both sides filed motions for summary judgement. On June 30, 2021, U.S. Magistrate Judge Foschio issued a Report and Recommendation finding that Plaintiff's motion should be denied and that Defendants' motion should be granted in part and denied in part. Docket No. 52.

On August 11, 2022, U.S. District Court Judge Vilardo issued a Decision & Order (Docket No. 79) which ruled on the parties' objections to the Report and Recommendation. In short, the Court granted summary judgment to Defendants on Plaintiff's false arrest claim on the basis of qualified immunity. The Court denied summary judgment on Plaintiff's First Amendment claim for retaliatory prosecution and his claims for malicious prosecution under federal and state law. The Court further dismissed the claims against the Town of Lewiston and Defendants' Penzotti and Previte in their official capacities. Docket No. 79 at p. 3, n. 1. More recently, the parties stipulated to the dismissal of Plaintiff's claim for First Amendment retaliatory prosecution with prejudice. Docket No. 90. As a result, the only claims remaining for trial are Plaintiff's malicious prosecution claims under federal and state law.

**OVERVIEW OF LAW AND DISPUTED ISSUES**

Under both New York State law and the Fourth Amendment, a malicious prosecution claim requires: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff; (2) the termination of the proceeding in favor of the accused; (3) the absence of probable cause for the criminal proceedings; and (4) actual malice. *Kee v. City of New York*, 12 F.4th 150, 161-62 (2d Cir. 2021). To succeed on a Fourth Amendment malicious prosecution claim, the plaintiff also must establish "some deprivation of liberty consistent with the concept of 'seizure' . . . to ensure that the § 1983 plaintiff has suffered a harm of constitutional proportions." *Singer v. Fulton Cnty. Sheriff*, 63 F.3d 110, 116 (2d Cir. 1995). Because it is undisputed that Defendants initiated a criminal proceeding, the Court focused its analysis on the second, third and fourth elements of a malicious prosecution claim.

    **A. Disputed Issues of Fact Remain on Whether There Was a Termination In Plaintiff's Favor on his State Law Claim for Malicious Prosecution**

On the Fourth Amendment claim, the Court found that Plaintiff satisfied this element of his federal malicious prosecution claim as a matter of law in light of the Supreme Court's recent decision in *Thompson v. Clark*, 142 S. Ct. 1332, 1336 (2022).

The Court reached a different conclusion on the state law claim. Under New York State law, a prosecution is favorably terminated when it cannot be brought again and when its termination is not inconsistent with the innocence of the accused. *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 195-96 (2000). In other words, "the absence of a conviction is not itself a favorable termination." *Martinez v. City of Schenectady*, 97 N.Y.2d 78, 84 (2001). The Court identified disputed issues of fact concerning this element as follows:

> In this case, it is unclear whether the criminal proceedings were favorably terminated under New York State law. The order dismissing the proceeding simply states that the information was dismissed with prejudice on Smith's motion with no opposition from the prosecution. Docket Item 34-13 at 31. Smith's counsel presented several arguments for dismissal in that motion, including that: (1) the information was defective

>on its face; (2) the underlying conduct was protected by the First Amendment; and (3) depending on the availability of certain audio recordings, the charge should be dismissed based on spoliation of evidence and due process grounds. *Id*. at 25-28.
>
>The transcript from the proceedings provides no clarity; on the contrary, it only adds confusion. In dismissing the case, the town justice noted that the prosecution had "actually up until today" opposed Smith's motion. *Id*. at 48. It is not clear from the record why the prosecution withdrew its opposition, but it does appear that Smith's counsel and the prosecution at least at some point had "discussion[s] about possible resolution." *Id.* at 38.
>
>Based on those facts, it is possible that the proceedings were dismissed because the prosecution and Smith agreed for some reason that the prosecution would not object to dismissal and would effectively abandon the prosecution. On the other hand, it also is possible that the charge was dismissed on its merits. Therefore, there is a material issue of fact on that element of Smith's state law malicious prosecution claim.

Docket No. 79 at pp. 18-19.

### B. Disputed Issues of Fact Remain Regarding the Absence of Probable Cause and Defendants' Entitlement to Qualified Immunity

The Court found disputed issues of fact existed on the issues of probable cause and qualified immunity.

"Probable cause to prosecute exists where there are facts and circumstances [that] would lead a reasonably prudent person in like circumstances to believe [that the criminal defendant is] guilty." *Stiggins v. Sullivan*, 2006 WL 8456459, at *2 (W.D.N.Y. Mar. 31, 2006) (citation and internal quotation marks omitted). Along the same lines, an officer is entitled to qualified immunity "if there was 'arguable probable cause' at the time the criminal proceeding commenced and continued. In assessing arguable probable cause, the inquiry is whether *any* reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that the challenged action was lawful." *Antic v. City of New York*, 740 F. App'x 203, 205 (2d Cir. 2018) (summary order) (emphasis in original) (citations and internal quotation marks omitted); *see also Creese v. City of New York*, 815 F. App'x 586, 590 (2d Cir. 2020) (summary order) ("In the context of a malicious

prosecution claim, arguable probable cause exists where . . . it was not manifestly unreasonable for [the defendant officer] to charge [the plaintiff] with the crime in question." (citation and internal quotation marks omitted)).[1]

The Court framed the relevant questions for the jury trial as follows:

1. Whether a reasonable officer would believe that Smith could have been found guilty of violating New York Penal Law § 240.30(1); and

2. Alternatively, the qualified immunity defense asks whether any reasonable officer could have determined that prosecuting Smith under section 240.30(1) was lawful or, conversely, whether prosecuting him under this subsection was manifestly unreasonable.

Docket No. 79 at p. 21.

The Court's analysis of those questions identified several fact issues for the jury to consider at trial:

> The answer to those questions is by no means clear. On the one hand, parts of the transcribed voicemails suggest that Smith wanted to resolve his issues through lawful means, such as at the next town board meeting or through a court of law. *See* Docket Item 34-5 at ¶ 37 ("[Y]ou are all going [to] be under . . . subpoena. . . . See you at the next Town Board meeting."). On the other hand, Smith stated, "You have a beef with my family or want to destroy our family, bring it on! . . . You guys can line up and try to destroy me. That's the only way you're going to shut me up." *Id.*
>
> And while those remarks may not constitute a physical threat *per se*, Previte alleges that he had received other threats from Smith as well. Docket Item 39-2 at ¶¶ 15, 18. For example, Previte asserts that another voice message left around the same time referred to a fight and cage match. Previte also says that Smith would approach him and other officers outside work and engage in threatening behavior. Docket Item 39-15 at ¶ 9 ("He would follow police vehicles, and when the officers would exit the vehicles, he would yell at the officers for no apparent reason. He had engaged in this conduct in my presence and on at least one occasion when he approached me while I was pumping gas at a local gas station.

---

[1] As the doctrine of qualified immunity only protects government officials from federal, not state, causes of action (see, *Jenkins v. City of New York*, 478 F.3d 76 (2d Cir. 2007); *Alhovsky v. Ryan*, 658 F.Supp.2d 526 (S.D.N.Y.2009)), the court must look to New York law regarding the immunity standards. In New York, a "good faith" immunity applies which is similar to federal law. To determine the immunity, the Court again looks to the probable cause standard. If probable cause is established, the immunity applies and is a complete defense to both the federal and state law claims (see, *Weyant v. Okst,* 101 F.3d 845 (2d Cir. 1996).

> He threatened me by telling me to take off my badge and go into a nearby field to settle this. He also tried to engage me in a 'cage match' during one of his phone calls. This action never stopped until the time he was arrested for aggravated harassment.").
>
> The information did not charge Smith with this behavior or for making those statements, and Smith denies making any threats. But those allegations raise a material issue of fact that might lead a jury to conclude that the defendants reasonably believed the transcribed voicemail messages were threats and that Smith therefore was guilty of violating section 240.30(1)(a). *See United States v. Santos*, 801 F. App'x 814, 816 (2d Cir. 2020) (summary order) ("A statement rises to the level of true threat if an ordinary, reasonable recipient who is familiar with the context of the [communication] would interpret it as a threat of injury." (citation and internal quotation marks omitted)). And "[w]hether [the] words used are a true threat is generally best left to the triers of fact." *Id.* (citation and internal quotation marks omitted).

Docket No. 79 at pp. 21-23.

### C. Plaintiff Cannot Establish Malice

The Court found that there is a question of fact as to whether the prosecution was supported by probable cause and therefore whether the prosecution was commenced and continued with malice.

Defendants maintain that there was no evidence of malice. Police chief Previte asked his police captain, John Penzotti, to listen to the calls. A decision was then made to play the calls to an assistant district attorney to determine if something could be done. They also called an individual who worked with the Niagara County Mental Health Department to see if there were any recommendations for seeking help for the plaintiff. The mental health professional advised the police chief that he was not sure if something could be done based on the calls, but the assistant district attorney felt the police had probable cause to charge the plaintiff with harassment. The Lewiston Police Department would normally arrest a suspect if it was determined that the suspect broke the law, without going to the district attorney. However, in this situation, since they were more concerned with his mental health, they not only sought the advice of an assistant district attorney, but they went the next step to obtain a warrant from a

Town Judge.  The misdemeanor information sheet setting forth a charge of aggravated harassment in the second degree was presented to Hon. Hugh Gee, the local Town Court Judge. The Judge believed there was probable cause to arrest the plaintiff and issued both a warrant and a restraining order against the plaintiff.  The plaintiff was arrested for aggravated harassment, and taken into custody.

At the time of the arrest, the charge for aggravated harassment with the intent to harass or threaten another if he or she makes a telephone call is set forth in NYS Penal Law §240.30(2).  This was a valid statute at the time of the arrest and remains a valid statute today. However, the information sheet prepared by Captain Penzotti inadvertently listed an old Penal Law section for aggravated harassment that was changed in 2014.  Captain Penzotti intended to charge the plaintiff with aggravated harassment in the second degree under §240.30(2); however he inadvertently typed §240.30(1)(a).  This was the original code section that would apply to aggravated harassment charges based on telephone calls.

Based upon the incorrect statute being typed, a motion to dismiss was granted since the statute referred to was non-existent.   There was no finding on the merits; the motion was granted as a matter of course.  The dismissal was not on the merits and was based on a clerical error.  At the time of the motion, the police chief was asked by the District Attorney's office if he wanted to re-file the charges and arrest the plaintiff based on the correct aggravated harassment statute.   Chief Previte told the D.A.'s office to leave the matter alone since the calls had stopped, and his primary concern was seeking help for the plaintiff.

## ALLEGED DAMAGES

Defendants maintain that Plaintiff was not deprived of any constitutional right and he has suffered no compensatory or punitive damages.

## **CONCLUSION**

The testimony at trial together with the documentary evidence will establish that Defendants are entitled to qualified immunity and that Plaintiff's rights were not violated.

DATED:   Buffalo, New York
　　　　　February 28, 2023

　　　　　　　　　　　　　　　　　　　　　*s/Joseph S. Brown*
　　　　　　　　　　　　　　　　　　　　　Joseph S. Brown, Esq.
　　　　　　　　　　　　　　　　　　　　　Christopher Maugans, Esq.
　　　　　　　　　　　　　　　　　　　　　GOLDBERG SEGALLA LLP
　　　　　　　　　　　　　　　　　　　　　*Attorneys for Defendants*
　　　　　　　　　　　　　　　　　　　　　665 Main Street
　　　　　　　　　　　　　　　　　　　　　Buffalo, New York 14203
　　　　　　　　　　　　　　　　　　　　　(716) 566-5400
　　　　　　　　　　　　　　　　　　　　　joebrown@goldbergsegalla.com
　　　　　　　　　　　　　　　　　　　　　cmaugans@goldbergegalla.com